COURCHESNE v. BROWN. (No. 1014.)

(Court of Civil Appeals of Texas. El Paso. Nov. 13, 1919.)

1. APPEAL AND ERROR ⚖️927(7)—REVIEW OF REFUSAL TO DIRECT VERDICT.

Court of Appeals, in determining correctness of lower court's action in refusing to direct verdict for defendant, must take plaintiff's evidence as giving the true version of the matter at issue.

2. MASTER AND SERVANT ⚖️77—PURPOSE OF EMPLOYER IN DEDUCTING HOSPITAL FEE FROM WAGES, JURY QUESTION.

In an employé's action for hospital expenses, question of whether employer's purpose in making monthly deductions from employés' pay, called "hospital fees," was to establish a hospital, or hospital plan, or to apply fees any time thereafter to the payment of hospital expenses at a hospital in case of sickness, held for jury.

3. MASTER AND SERVANT ⚖️77—DEDUCTION FROM WAGES FOR HOSPITAL SERVICE CONSTITUTES TRUST FUND.

Employer, who monthly deducts a portion of employé's wages for purpose of accumulating a fund with which to care for employés who become sick, holds the fund in trust for the contributing employés, and assumes no personal responsibility to employé who becomes sick, other than a proper and faithful administration of the trust fund, requiring him, in absence of his own hospital or a custom of furnishing hospital service, to furnish such services only if there is an unexpended portion of the trust fund.

4. MASTER AND SERVANT ⚖️77—BURDEN OF PROOF OF DEDUCTION OF MEDICAL EXPENSES FROM WAGES.

Employé suing to recover hospital expenses from employer who had deducted "hospital fee" from monthly wages of employés had burden of alleging and proving that fees were collected as a present hospital fund, to be used in case of sickness and that employer had on hand a sufficient amount of the funds to pay the expenses.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by C. A. P. Brown against A. Courchesne. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Winter, McBroom & Scott, of El Paso, for appellant.

Brown & Wilchar, of El Paso, for appellee.

WALTHALL, J. This is an appeal from a judgment in favor of appellee, plaintiff below, and against appellant, for $567.

For cause of action appellee alleged, substantially, the following:

Appellee on dates mentioned was in the employ of appellant; appellant is the owner of, and for many years was engaged in, a lime, rock, and lumber business, and has been the employer of labor, and has had employed in said business a great number of employés; appellee's special position with appellant was that of accountant, office manager, and cashier, at a salary of $200 per month; appellee entered upon his said employment on July 1, 1917; appellant withheld from appellee's wages $1 per month for each and every month that appellee was with appellant, for hospital fees, including medical attention and nurse hire, and withheld a like sum from each of his employés every month, and said deduction was made upon the books of appellant as "hospital fees," and that appellant has customarily, for a long period of time, been collecting said sum of $1 per month from his said employés as hospital fees; that the withholding and collecting by appellant of said sum of money as hospital fees from appellee's wages entitled appellee to hospital services, medical attention and nurse hire, including nurse's board in the event appellee became sick; that on September 26, 1917, appellee became violently sick while so employed, the particular sickness being appendicitis, and that it became necessary to send appellee to the hospital for proper treatment; that appellant's son, then actively engaged in managing and assisting appellant in said business, sent appellee to Hotel Dieu, a hospital; that it was necessary for appellee to receive treatment from said date to December 1, 1917, and to secure the services of surgeons and physicians in the operation; and that said hospital fees and nurses' and doctors' bills are as stated, the several sums itemized aggregated $747; that said sums were incurred by appellee, including necessary ambulance fee to and from the hospital of $10; that all of said bills were reasonable and necessary; that by virtue of the premises appellant became liable and bound for said sums; that appellant has failed and refused to pay said sums; and that it became necessary that appellee pay, and he has paid all of said sums, as the parties with whom said bills were made looked primarily to appellee for payment; that section 12g, pt. 1, of Employers' Liability Act (Acts 1913, c. 179), as amended by the 35th Legislature (1917) c. 103 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246–28), prohibits any employer from collecting from employés, any part of the premium which any employer might have to pay by reason of being a subscriber under the terms of said act; and appellant was a subscriber under said act, and appellant was an employer of more than five persons, and at the time appellee began working for appellant, and at the time of his sickness, and when said bills were incurred, appellant was a subscrib-

er to the Employers' Insurance Association under said act; the insurance so secured by appellant for his employés covered necessary hospital fees of all of his employés for injuries arising in the course of their employment, and that the hospital fees of $1 as above deducted from the wages of employés was, in the contemplation of the parties, for sickness or disability arising from any cause other than injuries received in the course of their employment, which sickness or disability would necessitate said employés or appellant incurring hospital fees, medical attention, nurse hire, and board; appellant owned no hospital, nor was he a subscriber to any particular hospital, nor was it specified by appellant which particular hospital would be necessary in the event it became necessary for an employé to incur hospital attention, yet appellee would show that by the direction of appellant's son, agent and manager of appellant's business, appellee was sent to the hospital Hotel Dieu; that while there were no written specifications between appellant and his employés as to what hospital services employès would be entitled to receive, said hospital fees were collected by appellant for the purpose of securing to employés said necessary medical and hospital attention, and that such was in contemplation of the parties, and that by the payment of said $1 per month appellant expressly and impliedly contracted to pay all necessary hospital and medical expenses and services, including nurse and board of his employés, including appellee; that between September 26 and November 1, 1917, appellant furnished to appellee certain goods, wares, and merchandise in the sum of $180 and appellee tenders said amount as a credit on the amount sued for, and prays judgment for $567, interest and costs.

Appellant pleaded general demurrer, general denial, expressly denied that he customarily or otherwise collected any sum from appellee or other employés as hospital fees; but alleged that it was the custom in his business to give any employé desiring it an order for a doctor, for medicines, or for hospital services, and to charge to and collect same from such employé.

A trial, with the aid of a jury, resulted in a verdict and judgment in favor of appellee for the amount sued for.

Appellant presents five assignments of error. The first claims error in the court's refusal to instruct a verdict in his favor. The second assignment involves practically the same proposition, and is to the effect that appellee's cause of action is based upon an implied contract to pay hospital services, including the items sued for, and that, the undisputed evidence showing that no such contract existed, the court erred in refusing to give the peremptory instruction asked by appellant. The insistence of appellant under these assignments is that the undisputed evidence shows that there was no contract between appellant and appellee obligating or binding appellant to pay the items for which he is sued, and it was therefore the duty of the court to instruct in his favor.

The evidence is of too great a volume to reproduce it all, and we will state only the substance of what to us seems to be the evidence on the essential facts. Appellee testified:

Appellee began work for appellant about June 30, 1917, as accountant; appellant employed from 80 to 150 men; appellant's business was that of operating a limestone quarry; as each man came to work his name was entered on the pay roll book, and the first charge against his account was a "hospital fee of one dollar at the top of the page"; every employé of every kind paid that hospital fee; appellee paid the hospital fee; appellee, while at work for appellant, was taken sick on the 25th or 26th of September (1917); between the time he went to work there and the time he was taken sick he took the matter of hospital fees up with appellant; representatives of the Texas Employers' Association came out there; appellant had signed a contract with them; appellant also carried insurance in an indemnity company, protecting him from damage suits or any cause of any liabilities on account of accidents to any of his employés. At that time witness read the law to appellant, and called appellant's attention to the fact that the collection of a dollar a month from his employés not only was of no benefit to him, but under the law it rendered him liable to personal damage suits by any one injured there—that is, an employé who was hurt there, according to the way witness interpreted the law, would be entitled to compensation at law, and also have the right of suit at common law against appellant. Appellant then stated that the dollar a month was not collected for the purpose of payment of any insurance he might have to pay for protection; that that dollar a month was a hospital fee, and was to be used for purposes outside of paying insurance; he partly stated that there were many things that came up which were not provided for in the law which he was compelled to take care of, and those accumulations of a dollar a month were to be used to take care of those things; sickness was mentioned in that connection in this way, he stated that his employés were frequently sick, and he had to take care of them, and his insurance did not take care of that, and he was obliged to have some other funds to take care of these other things; he stated it was not collected for accident insurance, it was for this other purpose; at that time something was said about a change in the way that that matter should be handled on the books; "Mr. Courchesne at that time told me if that was the case—by 'the case' I mean what I had referred to in the first part

of my testimony about the double liability; he stated we would no longer call it insurance, but call it hospital fees, and open a hospital account, and that he would provide hospital service; that is the statement I am positive he made in the exact words; after that conversation he continued to deduct a dollar a month from my salary up until the time I fell ill." Appellee was working for appellant at the time he was taken sick, and was sent to the hospital, where he was operated on for a gangrenous appendix. The evidence shows that the hospital and all services for which a charge is made were rendered to appellee as stated in the account. The bills charged and stated in the itemized account were paid by appellee, and the charges are shown to be proper and reasonable charges. Witness admitted he owed appellant the $180 on account. Appellee further testified:

"Mr. Courchesne stated to me that he was not collecting this fee for the purpose of paying any part of the accident insurance, and that the purpose of the fee in the future would be used as a hospital fee. Those are approximately the exact words. · Up to that time this dollar a month had been charged as insurance; it was called insurance. * * * What he agreed to do and what he did do were different things. Why, yes; I do claim that he even agreed that if there was anything ever said that he would pay my doctor's bills and medical attention; that was at the time we were speaking about, that I had with him at the time we changed it from insurance to hospital fees. At that time he did not mention my name; that he would pay my hospital fees, but he said that he would use my money to take care of those things. They were not included in accidents. He stated that to me. * * * Shortly after I had this conversation with Mr. Courchesne I fell ill. Up to that time we had that conversation nothing had been given for that dollar; the medical services that were furnished the employés had been charged to them, or had afterwards been paid for by the employés themselves up to that time. * * * Many of the men objected to the charge for medicines, and wanted to know what did they pay that dollar for, and so on, and I referred them to Mr. Courchesne. * * * Mr. Courchesne was the active manager and his son was also a manager. * * * I had a conversation with Mr. Courchesne himself, he and I, with reference to this hospital charge shortly after those insurance men were there. It was shortly before I fell sick. * * * I was not instructed to discontinue the charge, and the fact is I had a pamphlet which gave the law, * * * and showed him that, and he said, 'We won't call it insurance; we will call this a hospital account; and use it as a hospital account; and the little room will be the hospital room, and we will open an account on the ledger;' which I did, and it is on his general ledger called 'Hospital Account,' and it was opened with his full knowledge and consent. We discussed it thoroughly. * * * Up until the time I fell sick the matter was discussed between Mr. Courchesne and myself, but no change was made in our understanding as to what the funds were to be used

for. * * * Up until that time these charges had been made regularly and deducted from the men's wages. That had been the rule." Appellant had a regularly employed physician.

Mrs. Brown, wife of appellee, testified:

"I know Mr. Tom Courchesne very well. The night before Mr. Brown went to the hospital I had a conversation with Mr. Tom Courchesne about Mr. Brown at Mr. Courchesne's store. I went down to telephone for a doctor, and Mr. Tom Courchesne said Mr. Brown ought to be sent to the hospital. Yes; I had a conversation with Mr. Tom Courchesne subsequent to that time. The next morning, after Mr. Brown went to the hospital, Mr. Tom Courchesne came to my door with the mail, and we were talking about Mr. Brown's sickness and the hospital, and he told me not to worry about the expenses."

Appellant offered much evidence in denial of the appellee's evidence, and to the effect that the $1 fees collected monthly from employés were to cover premium for accident insurance, and not for hospital fees or services.

Our statements and quotations are made from appellee's evidence, and made only to determine the question raised by the assignment, viz., Was the court in error in refusing to instruct the jury to return a verdict for appellant?

[1] In determining the correctness of the court's action, we must take appellee's evidence as giving the true version of the matter at issue. The question is presented, Does the evidence show an obligation on the part of appellant personally, and out of his own means, to meet the necessary and proper hospital expenses of appellee? The facts of appellee's employment, his illness, the rendition of all of the hospital services constituting the several items charged, the necessity for such services, the reasonableness of them, and that appellee had paid them, were established beyond question. It is also shown that a fee of $1 a month was deducted from the wages of each employé, including appellee. One of appellant's contentions is that the purpose for which the fees were collected is not shown by this evidence, and what was shown was only a promise for some uncertain future action.

[2] While the evidence is not clear as to what was meant by "hospital fees," and how the fees were to be applied, whether in the establishment of a hospital, or hospital plan, or applied at any time thereafter to the payment of hospital expenses at a hospital in case of sickness, we think the evidence possibly sufficient to take the case to the jury on the issue of purpose in collecting the fees and the time when effective. Except as to the preparation of the little room as a hospital, the expressions used, according to the evidence, could have reference to matters already accomplished in what seemed to be the inauguration of the plan to accumulate

a fund with which to care for sick employés. The fees had been and continued to be collected; the account was then opened on the ledger as a hospital account, and so thereafter continued. There was no evidence that the little room referred to was then or thereafter to be additionally prepared for hospital uses. But the evidence offered does not suggest that the expenditure of hospital fees was to abide the preparation of the room for hospital uses, or to be in any way postponed or conditioned on the use of the room. The use or preparation of the room for a hospital, if a part of the plan, was with appellant. Had he prepared the room for hospital uses, or directed that appellee be taken there, or had the hospital service been on condition of the preparation and use of the little room as a hospital, it would suggest an issue not presented here. We are of the opinion that, so far as the expenditure of the fees collected is concerned, the evidence shows more than simply the expression of an intention of appellant to provide for hospital or hospital service, or hospital plan, at some future date. We have found no case which we consider directly in point in which the issues presented here are discussed. In the cases we have examined a hospital had already been furnished and was in use at the time of the collection of the hospital fees. Here appellant had no hospital, and no custom is shown of his having furnished hospital service.

[3] We have concluded, however, that the Supreme Court in Texas Central Railway v. Zumwalt, 103 Tex. 603, 132 S. W. 113, 30 L. R. A. (N. S.) 1206, announce principles of law conclusive of the issues presented here, both as to pleading and proof. That case is similar to the case here, in that the railroad company in that case, as appellant did in this (as found by the jury), inaugurated the plan of accumulating a fund with which to care for such of its employés as might become sick during such employment. The Supreme Court there said that the fund collected did not become the property of the company, but it was held by it in trust for the contributing employés; that, there being no method of executing the trust specified, the company was charged with the duty of administering it in such manner as would best accomplish the end for which it was accumulated—that is, to provide for the care of the sick employés who should come within the terms of the trust; that from the standpoint of the contributing employés the fund constituted a charity, because it was raised by them to be expended for the benefit of persons entitled thereto, who would receive it without cost to them. The point of application is the court said the fund collected was a trust fund. In this case, as in the Zumwalt Case, no method is shown for executing the trust, and appellant is charged with the duty of administering it in such manner as would best accomplish the end for which it was accumulated; that is, to provide for the care of the sick employés who should come within the terms of the trust. Evidently the extent of the duty appellant assumed in collecting the fund was to properly administer it. If appellant had a hospital the implication arising from the collection of the fees would be service at the hospital; but, having no hospital, we think it would not necessarily be implied that he would furnish one. It is a matter of allegation and proof. We think if appellant is liable for hospital service in the absence of a hospital of his own, or custom of having furnished hospital service, it would be necessary to allege and to prove that appellant, as trustee, had on hand an unexpended portion of the trust fund which appellee was entitled to have administered by appellant in the discharge of the hospital services rendered. Evidently, under the holding in the Zumwalt Case, appellant assumed no personal liability to appellee beyond that of a proper and faithful administration of the trust fund. While we think the evidence is rather meager and unsatisfactory as to the purpose for which the funds were collected, beyond that it was for hospital fees, we think the evidence sufficient to go to the jury on that issue. "Hospital fees" may mean that it was to provide a hospital, and it may mean that it was to be administered only in case of sickness. We think, however, in the absence of a hospital owned or subscribed to by appellant, or custom to furnish hospital service, the evidence is wholly insufficient to raise the presumption that hospital service in a hospital not owned by appellant is implied, or to justify a personal judgment against appellant to supply hospital service.

[4] The burden is on appellant, under the evidence and facts shown, not only to allege and show the collection of fees, but the purpose and extent of the purpose for which the fees were collected as a present hospital fund to be used in case of sickness. It would necessarily follow that it must also be alleged and shown that appellant had on hand sufficient amount of the trust funds to which appellee was entitled to pay the items of the account; otherwise appellant would have nothing to administer, no duty to perform as trustee. We need not discuss other assignments.

The case is reversed and remanded.