Texas Central Railroad Company v. J. L. Zumwalt.

No. 2101.   Decided November 30, 1910.

**Railway—Hospital—Negligence—Agency—Charitable Trust.**

A railway company contracted with a competent physician that the latter should maintain a hospital, in which all its employes should be entitled to receive free medical and surgical treatment, for which he was to receive as compensation the sum of fifty cents per month from the wages of each employe, which amount the company deducted from their wages and paid to the physician so contracting.   An employe treated there, having lost the sight of an injured eye by negligence of the surgeon, sued the company for damages thereby.   Held, that, in the absence of evidence to show that the company was acting in the matter to serve some interest of its own as well as that of its employes, it occupied the position towards them, of one administering a charitable trust; the surgeon was not its agent, and it was not liable to the employe for his negligence.

Error to the Court of Civil Appeals for the Second District, in an appeal from Bosque County.

Zumwalt sued the railway company and appealed from a judgment for defendant.   The company obtained writ of error on a judgment reversing and remanding.

*J. A. Kibler* and *Cureton & Cureton,* for plaintiff in error.—The Court of Civil Appeals erred in holding that under the facts of this case it was for the jury and not for the court to say, from all the circumstances of this case, whether the appellees' hospital department is a mere charity and not for profit; for the evidence conclusively showed, without room for reasonable minds to differ as to the fact, that plaintiff in error maintained its hospital department in connection with its road for the better care of its sick and wounded employes; that it employed Dr. Webb as chief surgeon and others as local surgeons; that the money or fund from which said chief surgeon and the other employes thereof were paid was derived from what is called the hospital fund, which fund was raised by a tax of fifty cents per capita per month from all its employes and officers except its general officers; that the entire hospital fund was paid out to Dr. Webb or to the surgeons under his direction and control for the treatment of employes, and that the appellant did not conduct this department as a business; that no consideration was derived therefrom, and that it was not designed for profit.   Galveston, H. & S. A. Ry. Co. v. Hanway, 57 S. W., 697; Galveston, H. & S. A. Ry. Co. v. Scott, 18 Texas Civ. App., 321; Southern Pac. Ry. Co. v. Mauldin, 19 Texas Civ. App., 166; Richardson v. Carbon Hill Coal Co., 20 L. R. A., 338; Union Pac. Ry. Co. v. Artist, 9 C. C.

A., 16 et seq.; South Florida Ry. Co. v. Price, 13 So., 638; Quinn v. Kansas City, M. & B. Ry. Co., 30 S. W., 1036; Eighmy v. Union Pac. Ry. Co., 27 L. R. A., 296; Pittsburg, C. C. & St. L. Ry. Co. v. Sullivan, 27 L. R. A., 840; Louisville & N. Ry. Co. v. Foard, 47 S. W., 343; Laubheim v. De K. N. S. Co., 1 Am. St. Rep., 815; 26 Cyc., 1082; Thompson on Negligence, secs. 3841, 3842 and 3843.

*Prendergast & Williamson,* for defendant in error.—A corporation organized for profit, conducting a hospital for charge, is liable to one injured therein through the negligence of its employes. Texas & Pacific Coal Co. v. Connaughton, 20 Texas Civ. App., 642; Gitzhoffon v. Sisters of Holy Cross, 88 Pac., 691; University of Louisville v. Hammock, 106 S. W., 219; Richardson v. Carbon Hill Coal Co., 20 L. R. A., 338; Sawdey v. Spokane Falls Ry. Co., 70 Pac., 973; Brown v. LaSociete Francaise, 71 Pac., 516; Phillips v. St. L. & S. F. Ry. Co., 111 S. W., 109.

MR. JUSTICE BROWN delivered the opinion of the court.

This suit was instituted by the defendant in error against the railroad company to recover damages for the loss of an eye which was claimed to have been caused by the negligence of Dr. Samuel Webb. There is no controversy as to the facts of this case and they may be briefly stated as follows:

The railroad company entered into a contract with Dr. Webb in terms as follows:

"The State of Texas,
County of McLennan.

"This memorandum of agreement, made and entered into on this day by and between S. Webb, Jr., party of the first part, and the Texas Central Railroad Company, party of the second part,

"Witnesseth: The party of the first part hereby agrees to act as chief surgeon of party of the second part, and as such to establish and maintain at Walnut Springs, Texas, an adequate and suitable hospital at his own expense and cost for the treatment of all employes of the party of the second part who are entitled to hospital privileges as hereinafter provided, and to furnish all instruments, devices and appliances and all medicines and other necessaries (including board and lodging while patients are at the hospital) for the proper treatment of all such employes who are entitled to hospital privileges under this contract, or the rules and regulations of the party of the second part governing in such matters.

"2. It is understood that none but white employes shall be entitled to the hospital privileges herein mentioned, and that no employe shall be treated under the terms hereof for any venereal disease, and that no person suffering from contagious disease shall be admitted to the hospital of the party of the first part.

"3. As consideration to party of first part for the performance of the foregoing covenants and agrees, party of the second part agrees to collect from all of its white employes, except its general officers, the sum of fifty cents per month as hospital fees and to deliver to

the party of the first part as compensation for his services, etc., the amount thus collected at the end of each month.

"4. It is understood and agreed that no hospital fee shall be collected by party of the second part from any employe remaining in its service for a period of less than one week.

"5. It is further agreed and understood that local surgeons shall be appointed by party of the first part at all important towns on line of party of the second part, and that such local surgeons may be called by party of the second part or its authority to treat in cases of emergency any employe entitled to hospital privileges hereunder, and the fees of such local surgeons for such services shall be deducted by the party of the second part from the hospital fund hereinbefore provided for.

"6. As part compensation to all local surgeons appointed hereunder party of the second part agrees to furnish to them annual transportation over its line of road, without cost to the party of the first part.

"7. This contract shall continue in force for a term of five years from the date hereof, subject, however, to be terminated by either party hereto, by giving written notice of sixty days to the other party of his intention so to do.

"In testimony whereof, witness the signatures of the Texas Central Railroad Company, acting by and through C. Hamilton, its Vice-President and General Manager, and my hand at Waco, Texas, on this, the first day of January, 1907.

Witness:              TEXAS CENTRAL RAILROAD COMPANY.
  G. W. Young,         C. Hamilton, Vice-President and
                      General Manager.
  A. B. Chambers.      S. Webb."

Dr. Webb was a competent surgeon and physician.

Dr. Webb established the hospital provided for in the contract at Walnut Springs, at which place Zumwalt was engaged as a boiler maker in the employ of the railroad company. In the course of his work a particle of iron struck in the ball of one of his eyes and he went to Dr. Webb to have it removed. Dr. Webb removed the piece of iron from his eye, but it is claimed that he acted negligently in using an instrument which was not disinfected or sterilized and that the eye became infected and it became necessary to remove the ball.

It is unnecessary to set out the facts with regard to Dr. Webb's negligence, for that question is not before us. The case is presented to this court upon the assumption that Dr. Webb was negligent in the manner in which he performed the operation. The question that we have to deal with is, was the railroad company liable for the negligence of Dr. Webb? On the trial the District Court charged the jury to return a verdict for the defendant, which was done, and, upon appeal to the Court of Civil Appeals, that judgment was reversed and the cause remanded for a new trial. This court granted a writ of error upon the ground of conflict with Galveston, H. & S. A. Ry. Co. v. Hanway, 57 S. W., 695.

It was the custom of the railroad company each month to deduct

fifty cents from the wages due to each employe, which constituted a fund to be applied to the procurement of medical attention and care for any of such employes who might be injured or become sick during his employment with the company. When Zumwalt was employed by the railroad company he understood this custom of the company and expected it to reserve fifty cents out of his monthly wages for the purpose of providing medical treatment in case he should become sick or receive an injury. The company did reserve from Zumwalt's wages, for each and every month up to the time of his injury, fifty cents, which went into the hospital fund. Under the contract, which is copied above, the railroad company monthly turned over to Dr. Webb the full amount received by it from its employes by means of the deduction before stated. There is no evidence to show whether this was sufficient to pay the expenses of the hospital which Dr. Webb established at Walnut Springs or not; it does appear from the contract that Dr. Webb undertook to furnish, for the sum collected, medical attention and proper care to all persons entitled to participate in the fund. The railroad company claims that it was administering a charity in the performance of which it received from its employes the fund provided by the tax levied and paid it over to Dr. Webb, who was in charge of the hospital, therefore it is not liable for the injury resulting from his negligence.

If the fund distributed was such that its use constituted a charity and the railroad company had no purpose to be served in connection with its own business by administering the fund, then it was only required in administering the trust to use ordinary care in the selection of Dr. Webb as the means by which to carry out the scheme inaugurated. Union Pac. R. R. v. Artist, 60 Fed., 365; Fire Ins. Patrol v. Boyd, 120 Pa. St., 643. If, however, the railroad company originated the scheme with a view to promote its own business and undertook the duty of dispensing the fund to accomplish a purpose of its own it would be liable for the negligence of Dr. Webb, because under these circumstances the hospital would be the business of the railroad company and Dr. Webb would be its agent. The effect of the evidence is that the railroad company inaugurated the plan to accumulate a fund with which to care for such of its employes as might be injured or be sick during such employment, and that fact suggests that it may have had a purpose of its own, but there is nothing in the evidence to indicate what that purpose was, and liability can not be based upon vague speculation.

The fund did not become the property of the company, but it was held by it in trust for the contributing employes. There being no method of executing the trust specified, the company was charged with the duty of administering it in such manner as would best accomplish the end for which it was accumulated, that is, to provide for the care of the sick and injured employes who should come within the terms of the trust. From the standpoint of the contributing employes the fund constituted a charity, because it was raised by them to be expended for the benefit of persons entitled thereto, who would receive it without cost to them. It may then with propriety be said that the railroad company was charged with dispensing a

charity fund, and if it made the contract with Dr. Webb as a means of executing the trust reposed in it, that is, to give relief to the sick and injured employes coming within the class entitled to receive it without cost to them, it was engaged in dispensing a charity and, under such circumstances, Dr. Webb would not be the agent of the company, nor would he be performing or transacting a business of the company, therefore, it would not be liable for his negligence in the discharge of his duty as surgeon.

Although the fund was accumulated in the treasury of the company for charitable purposes, and the company was charged with the duty of dispensing it for such purpose, yet if in fact the contract with Dr. Webb was made by the company in order to promote its own interest by the administration of the trust fund and it had that effect, he was the agent of the company and it should be held liable for his negligence. Upon the face of the contract it appears to provide the most practical method by which the trust fund could be applied to the purposes for which it was accumulated. The contract was made with a physician who was required to do those things which the sick and injured would need to have done for them and the entire fund received by the railroad company was devoted to execution of the contract and the accomplishing of the purpose to which it was intended to be devoted. The contract did not require Dr. Webb to do anything for the railroad company in connection with the discharge of his duties, nor, indeed, does it appear from the terms of that instrument or the attending circumstances that by the performance of it the business of the railroad company was in any manner affected, or that Dr. Webb, in the discharge of his duties, was in any manner serving the railroad.

In order to hold the railroad company liable under such circumstances it must be shown in some way, or it must appear from the facts and circumstances, that in truth and in fact the railroad company used the trust fund, by means of the contract, to its own advantage. We find nothing in the facts found by the Court of Civil Appeals which would indicate that any business of the company could be promoted, hindered or delayed either by having the hospital or by its nonexistence. It is true that the company reserved the right to terminate the contract, but that was eminently proper, so that in case Dr. Webb failed to carry out the good purpose of the parties another arrangement could be made. All that has been done by the company is consistent with a desire to faithfully carry out the purpose of its employes in creating the fund. We can not attribute to the company motives not indicated by its acts, nor proved by the evidence.

The Honorable Court of Civil Appeals erred in reversing the judgment of the District Court. It is ordered that the judgment of the Court of Civil Appeals be reversed and that the judgment of the District Court be affirmed.

*Reversed and judgment of District Court affirmed.*