BARNES v. PROVIDENCE SANITARIUM.
(No. 6519.)

(Court of Civil Appeals of Texas. San Antonio. March 23, 1921. Rehearing Denied April 13, 1921.)

1. Charities ⬳45(2) — Institutions not liable for acts of employés unless there is negligence in employing such employés.

An institution of purely public charity is not liable in damages for the negligent acts of its employés, although it is liable for injuries resulting from failure to exercise ordinary care in selecting and retaining employés.

2. Charities ⬳45(2) — Charitable institution sued for injuries from servant's negligence must plead facts in avoidance.

A corporation sued for injuries from servant's negligence, claiming exemption on the ground that it is a charitable institution, must affirmatively plead and prove the facts necessary therefor.

3. Charities ⬳1 — Sanitarium held a public charity.

A sanitarium organized to nurse and restore to health the sick and minister to the unfortunate of every creed and nation, any profits put back when earned and none of its

income or gifts diverted to private gain or profit, is purely a public charity.

4. Charities ⬳45(2) — Facts held to show that defendant sanitarium was a charitable institution as a matter of law.

In a personal injury action against a sanitarium, facts in evidence held to show as a matter of law that the defendant was purely a public charity such as is exempt from liability for the negligent acts of its employé which resulted in plaintiff's injury, so that instructed verdict for defendant was proper.

Appeal from District Court, McLennan County; H. M. Richey, Judge.

Suit by J. N. Barnes against the Providence Sanitarium for damages for personal injury. Instructed verdict and judgment for the defendant, and the plaintiff appeals. Affirmed.

Tom M. Hamilton and J. A. Kibler, both of Waco, for appellant.
Sanford & Harris, of Waco, for appellee.

SMITH, J. J. N. Barnes brought suit against the Providence Sanitarium, a Waco hospital corporation, for $40,000 damages, alleging that while he was confined to his bed as a patient in the hospital one of the attendants therein negligently administered a certain treatment to him, whereby he was seriously and permanently injured. The suit was defended upon the ground that the sanitarium was an institution of purely public charity and as such was exempt from liability for the negligent acts of its employés. The trial resulted in an instructed verdict in favor of the sanitarium, and from the judgment rendered in accordance therewith Barnes appeals, complaining: (a) That the trial court should have submitted to the jury the issue of negligence as well as the issue of whether or not the sanitarium was shown to be an institution of purely public charity; and (b) that the evidence not only failed to show that the sanitarium was such institution, but conclusively showed that it was not. We will consider these questions in the reverse order of their presentation.

The purposes of the corporation are thus stated in article II of its charter:

"Said corporation is formed for benevolent and charitable purposes, and especially for the maintenance, support and operation of a hospital in the city of Waco, Texas, at which the members of said corporation will administer to the sick, infirm and afflicted of all creeds and nations, and to enable its members to receive the sick, the helpless and afflicted and to nurse and care for them and to alleviate their pain and suffering and to restore them as far as possible to health."

Sister Regina, the president of the corporation, was the only witness in the case who testified to any facts bearing on the second

question raised, or who undertook in any manner to describe or explain the nature of the business of the corporation, or the conduct of it affairs, the source or amount of its income, or the purposes or amounts of its disbursements. No other witness or source of evidence was offered or disclosed, if any existed. Her testimony is not as satisfactory or explicit, or as frank, in some particulars, as we would like or as the nature of the case and the defense thereof is entitled to; but it is undisputed, and, in the particulars mentioned, it comes here unchallenged. It is upon her testimony alone, then, that we state the case.

According to the testimony of Sister Regina, the "Daughters of Charity of St. Vincent de Paul" is a religious "community," the members of which are "Sisters of Charity," as they are described throughout the record in this case. The apparent objects of the order are: (a) The training of young women for nursing the sick and otherwise ministering to the unfortunate, and the care of them after they have devoted their active lives to such work and become infirm and indigent; and (b) through the medium of these Sisters of Charity, the establishment and maintenance of community local houses throughout the world. The parent organization, or "Mother House," is located in Paris, France, and a "Central House" for the eastern division of the United States is at Emmettsburg, Md., and of the western division at St. Louis, Mo., to which latter establishment the local communities in Texas are now attached, and to which they now report. In the United States there are now 30 or 40 "community houses," or hospitals, and in Texas 5, including the one involved.

Appellee, the Providence Sanitarium, is a product of the order mentioned, and is a corporation chartered under the laws of Texas, four Sisters of Charity, members of the community, being the first year directors designated in the charter. The purpose clause of the charter has already been shown. It has no capital stock. No certificates are issued as evidence of ownership of stock or of interest or membership in the corporation. The stockholders, or "members," as they are described in the charter, consist at the present of 12 Sisters of Charity of the community, who are selected by the Sister Superior at St. Louis and sent to Waco for that purpose. They manage the affairs of the corporation under the supervision of the St. Louis authority, who may remove them at will. The interest of these Sisters in the corporation is not assignable in any event. When sent to Waco for that purpose by the Sister Superior of St. Louis, they automatically became members of the corporation, and when they retire from membership in the society, either by death or removal by the Sister Superior, or otherwise, their membership in the corporation automatically ends.

To be eligible for membership in the order, she must be of the Catholic faith, and for membership in the corporation she must be selected for that responsibility by the Sister Superior at St. Louis. They must report to and receive their instructions from the Sister Superior of the "Central House" at St. Louis, who is under like supervision of the Mother Superior at Paris. The Mother House at Paris is supported by the "central houses," which in turn receive their incomes from the local communities or hospitals, which derive their revenues from the fees of pay patients; that is to say, from patients or patrons of the hospitals who pay for the accommodations they receive from these institutions. This, in general terms, appears from the record to be the system of internal government under which the "Daughters of Charity of St. Vincent de Paul" operates.

The Providence Sanitarium, as a part of this system, began operating about the year 1905, although it does not seem to have been incorporated until 1908. Its grounds, comprising 8 or 10 acres of land, were donated to it by ciizens of Waco. Its buildings and equipment cost about $250,000. Of this amount, about $65,000 was loaned or invested by citizens of Waco, and $107,000 by the Central House at Emmettsburg; where the balance of it came from is not shown. The present value of the whole property is estimated to be a half million dollars. The buildings contain about 75 rooms, for the use of which pay patients are each charged from $10.50 to $45 a week; when a special nurse is furnished a patient, an additional charge of $25 a week is made. Extra charges are also made against pay patients for the use of the operating room in case of operations, laboratory facilities, medicines, medical supplies, surgical dressings, etc. From these charges against pay patients the sanitarium derives its revenues. The funds with which the sanitarium was constructed and equipped have never been repaid, except in a small part. The corporation has never made or declared a dividend, has never made any profits, and is at this time in arrears in the payment of interest on its debts, and in the payment of its current expenses. Sister Regina testified that when the corporation enters a profit-earning era the surplus profits will be devoted to enlarging and improving its facilities, after the payment of its debts; and when the necessities of this purpose are met, the surplus will be turned over to the "Central House," which will appropriate it to the aid of its other local communities and to the establishment of additional ones. The receipts from the sources mentioned for the year 1919 amounted to $110,000, while the expenditures ran to $114,000, a net loss for the year of $4,000.

The members of the corporation receive no salary or other compensation, except their room, board, and clothes. The 75 employés

of the sanitarium are paid salaries ranging from $250 a month with room and board to the doctor in charge of the laboratories, down to wages of $5 a month with board and room to nurses in training.

Sister Regina further testified, in substance, that patients are received into the hospital without regard to creed, nationality, financial condition, or the nature of their diseases, except that those suffering with contagious diseases are not taken in. If the patients taken in are able to pay for the accommodations they get, they are expected to do so; if not, then they are taken in and cared for just the same. No distinction is made between the treatment of the rich and the treatment of the poor, nor in the facilities furnished them; those unable to or who do not pay are given the same consideration, care, and treatment that is given those who are able to or do pay. These charity patients are visited and their ailments diagnosed and treated by the hospital doctors, and nurses, medicines, room, food, and even clothing, when required, are likewise supplied; and when the nature of their troubles make such necessary they are given the use of the operating rooms, and the hospital surgeons operate, and all these things are free to the charity patients, as are the use of the laboratory facilities. And the charities of the institution go further than all this, according to Sister Regina; the Sisters go out into the city and without charge visit and minister to the poor and sick, and those in trouble, and without charge supply them with doctors, medicines, food, and clothing, and when such cases reach their attention, they seek out unfortunate girls and take them in and care for them. The expense of the institution's charity work in 1919 amounted to $8,100.

The foregoing embraces, in substance, the material facts testified to by the president of appellee corporation, whose testimony covered more than 40 pages of the record.

[1, 2] It seems now to be a thoroughly settled rule, and appellant so admits, that an institution of purely public charity is not liable in damages for the negligent acts of its employés, although it is required to use ordinary care in the selection and in the subsequent retention of its employés, and is liable in damages for injuries resulting from a failure to exercise such care. The last question, however, is not in this case, since it was raised by neither pleadings nor evidence, nor is it urged here. Corporations are, of course, liable as a general rule for the negligence of their servants. And where a corporation is sued for damages for injuries resulting from the negligence of its servant, and it desires to claim exemption from the general rule, it must affirmatively plead and prove the facts entitling it thereto. This being true, it devolved upon appellee in its pleadings in this case to affirm-

atively set up its exemption as a defense, as it did, and the burden of proof rested upon it to prove the facts establishing such defense. The facts here were peculiarly within the knowledge of appellee. The nature of its business, and the methods by which it conducted the same, are such that the facts thereof are not available to the public, nor were they to appellant.

[3] Because of the application here of the burden of proof rule, and of the action of the lower court in peremptorily instructing the jury to return a verdict for appellant, we are confronted with, and must determine from the evidence, the question: Does the evidence establish, as a matter of law, that the Providence Sanitarium is such an institution of purely public charity as to entitle it to the protection of the rule exempting such institutions from liability for the negligent acts of its employés? If so, the judgment here appealed from must be affirmed; if not, it must be reversed.

As we have stated, the facts of the case are embraced in the testimony of the president of the corporation, and show that the ultimate purposes of the corporation are benevolent or charitable, to care for the poor, to nurse the sick and restore them to health, to minister to the unfortunate of every creed and nation; that any profits arising from the revenues derived from the hospital or other sources are put back, or are to be put back when earned, into the channels of the original purposes, thus precluding the diversion of any part of these funds to private gain or profit. It is universally held, so far as our search discloses, that these facts bring the agency of such purposes and accomplishments into the category of institutions of purely public charity. We will not burden this opinion with the citation of authorities of foreign jurisdictions, but call attention to these Texas cases: St. Paul's Sanitarium v. Williamson, 164 S. W. 36; Scott v. All Saints' Hospital, 203 S. W. 146; Ry. Co. v. Zumwalt, 103 Tex. 603, 132 S. W. 113, 30 L. R. A. (N. S.) 1206; Ry. Co. v. Hanway, 57 S. W. 695, and 94 Tex. 76, 58 S. W. 724.

[4] In St. Paul's Sanitarium v. Williamson, supra, in which writ of error has been denied by the Supreme Court, not only were the facts in all substantial phases identical with the facts in this case, but the sanitariums in both cases belonged to the same chain of institutions, with identical charters, and under the supervision of the same central house. And in that case, upon the conclusion of the evidence the trial court peremptorily instructed the jury that the sanitarium was a charitable and benevolent institution as a matter of fact, and in the opinion by Justice Rasbury of the Court of Civil Appeals of the Fifth District it was held that "the evidence, without contradiction," supported the peremptory instruction,

and after classifying the holdings in many jurisdictions, it is said that—

"There is yet another line of cases that do not concede entire exemption from the rule of respondeat superior, nor yet bring such institutions entirely within the rule, but hold to the rule that charitable institutions, such as appellant, in respect to the negligence of physicians, nurses, and servants, who are said not to be the agents of the institution, are liable only when it appears from all the facts and circumstances that the institution failed to exercise ordinary care in the selection and retention of such employés, and that in the application of the rule it is immaterial whether the patient upon whom the injury was inflicted be a beneficiary of the charity of the institution or one who is paying full consideration for his or her care and nursing. G. H. & S. A. Ry. Co. v. Hanway, 57 S. W. 695; Hanway v. G. H. & S. A. Ry Co., 94 Tex. 76, 58 S. W. 724; Texas Central R. R. Co. v. Zumwalt, 103 Tex. 603, 132 S. W. 113, 30 L. R. A. (N. S.) 1206; Arkansas Midland R. Co. v. Pearson; 98 Ark. 399, 135 S. W. 917, 34 L. R. A. (N. S.) 317; McDonald v. Mass. Genl. Hospital, 120 Mass. 432, 21 Am. Rep. 529; Union Pacific R. R. Co. v. Artist, 60 Fed. 365, 9 C. C. A. 14, 23 L. R. A. 581; Hearns v. Waterbury Hospital, 66 Conn. 98, 33 Atl. 595, 31 L. R. A. 224.

"An accepted authority tersely states the rule to be that 'a charitable corporation is not liable for injuries resulting from the negligent or tortious acts of a servant in the course of his employment, where such corporation has exercised due care in his selection.' 6 Cyc. 975.

"It will be seen from the cases cited from this state that the rule here is that such institutions, with respect to patients within their walls or under their care, whether the patient be one on charity or one who pays, are liable for the negligence of their physicians, nurses, and servants only when it appears that ordinary care has not been exercised in their selection and retention; and that, with respect to injuries inflicted upon third persons and employés by the negligence of their managers, agents, and servants in the conduct of the institution, they come entirely within the rule of respondeat superior."

In Scott v. All Saints Hospital, supra, the facts also were very similar to the facts in this case, and while in that case the primary question was one of taxation and not of liability, the court held that the facts constituted the hospital an institution of purely public charity, affirming the judgment of the trial court to that end, and in so holding, said:

"Further, we are of the opinion that the charge made to patients who are financially able to pay the same is shown not to be made 'with a view to profit,' in the words of our statute, but for the purpose of carrying out the dominant purpose and general beneficent design of the founders of the institution. Such funds as are collected from patients do not go to any stockholders, for there are none, nor to accumulate in the coffers of the institution, but are used for the maintenance of the hospital and the furtherance of the announced purpose of its foundation."

In accordance with these decisions, as well as others cited, but not here quoted from, we hold that the facts, as disclosed by the testimony, in this case establish as a matter of law that appellee is an institution of purely public charity, and as such is exempt from liability for the alleged negligent act of its employé which it is alleged resulted in the injuries complained of, and that therefore the court did not err in requiring the jury to return a verdict for appellee. This holding requires us to overrule all assignments, and to affirm the judgment of the trial court.

Affirmed.