## CLAYTON v. SOUTHERN METHODIST UNIVERSITY.

### No. 13370.

Court of Civil Appeals of Texas. Dallas.
May 7, 1943.

Rehearing Denied June 4, 1943.

Harris & Palmer, of Dallas, for appellant.

Julian B. Mastin and Sawnie R. Aldredge, both of Dallas, for appellee.

YOUNG, Justice.

This suit was brought by plaintiff against Southern Methodist University for personal injuries, alleged to have been received by his wife, Doris Clayton, in the collapse of a temporary grandstand erected by appellee on its campus for use of paying spectators at a football game played November 9, 1940. On the trial, after plaintiff had rested, and before introduction of evidence by defendant, the latter's motion for instructed verdict was filed and sustained, resulting in a judgment adverse to appellant, and his appeal therefrom.

Plaintiff's pleading alleged in detail the facts preceding said injuries, such as ownership and control by defendant of the football grounds and stands for accommodation of spectators, inclusive of these temporary bleachers; the purchase of tickets for himself and wife; of their being seated in the stand, and the falling of same shortly after the game had gotten under way. Damages were claimed following certain physical injuries to Mrs. Clayton; defendant's liability being predicated upon three charges of affirmative negligence, viz.: In permitting patrons to crowd onto said bleachers beyond the normal capacity thereof; of faulty construction, i.e. in failing to brace said bleachers sufficiently to bear the anticipated stress and strain; in the use of old, weakened and defective material in erection of the particular stands. Plaintiff further alleged negligence in the selection and retention by defendant of L. B. Morgan, the employe who had supervised erection of said bleachers, but the plea was abandoned during course of trial.

Plaintiff's point of error manifestly is of the directed verdict; in other words, of the

trial court's failure to submit appropriate jury issues on negligence, proximate cause and damages. Defendant's motion for instructed verdict consisted of five grounds, which are in turn made its counterpoints on appeal. Of these, we think the first and fifth points only are pertinent to the facts of this record. They are in effect, (1) that plaintiff has wholly failed to prove any specific act of negligence alleged by him; and (5) that defendant University is a corporation, benevolent and educational in character, with no capital stock or stockholders, with its property and funds devoted to the charter purpose of maintaining an institution of higher learning; and as such charitable body, is exempted by law from liability in damages for the negligent acts of its employes. Obviously, the trial court has held that the rule of law just stated was applicable to the instant facts.

The charter of Southern Methodist University shows it to be a corporation formed for the support of an educational undertaking, owned, maintained and controlled by the South Central Jurisdictional Conference of the Methodist Church; its Board of Trustees elected by subordinate bodies of the same religious denomination. It has no stock and is not organized for pecuniary gain or profit. Ownby Stadium, where the game in question took place, is on the University grounds; all money derived from football or other athletic contests going into the general fund and used, in combination with all other moneys, for general educational purposes. Defendant University has various Departments, including Academic, Law School, Graduate School of Theology, College of Arts and Sciences, Engineering School, School of Music, School of Business Administration and a Department of Athletics, supervised by a professor of physical education, who has charge of all athletic activities; some aspects of physical education as a part of the college course being required of all students. Football and other games within the physical education program are not self-sustaining, and over a period of fifteen years, the Athletic Department has shown a net loss to the general fund of some $55,000.

That defendant is a charitable institution, as the term has been universally defined, may well be conceded. 9 T. J., Charities, p. 65, Sec. 15; Lightfoot v. Poindexter, Tex.Civ.App., 199 S.W. 1152, writ refused. It does not follow, however, that charitable institutions are wholly exempt from liability for the negligence of their agents or servants. The rule is quite the contrary in this State, though in some jurisdictions the doctrine of full immunity is recognized. See Footnote to President and Directors of Georgetown College v. Hughes, 76 U.S.App.D.C. 123, 130 F.2d 810. In Texas, a charitable institution's responsibility in tort is measured by the relationship existing toward the injured party. To those directly receiving benefits, such as a hospital patient, university student, or other direct recipient, the liability is only for want of ordinary care in the selection and retention of employes or servants. To others not thus directly benefited, such as invitees, strangers, or its own employes, liability is wholly governed by the rule of respondeat superior. St. Paul's Sanitarium v. Williamson, Tex.Civ.App., 164 S.W. 36, writ refused; Armendarez v. Hotel Dieu, Tex. Civ.App., 145 S.W. 1030; Hotel Dieu v. Armendarez, Tex.Civ.App., 167 S.W. 181; affirmed in Tex.Com.App., 210 S.W. 518; 8 Tex. Law Review, p. 297; also Annotation, 133 A.L.R. 821. The principle announced in the cases just cited is to the effect that charitable institutions are on the same basis as other corporations and individuals as to liability for negligence to those who are non-beneficiaries; and the Claytons, patrons of an athletic event on the occasion in question, cannot seriously be considered as direct objects of defendant's charitable trust. They were, at most, invitees or strangers. With all deference to the earnestness of defense counsel in expressing a different view, their Texas authorities have no particular bearing on the situation at hand, involving, as they do, patients in hospitals; and in Steele v. St. Joseph's Hospital, Tex.Civ.App., 60 S.W.2d 1083, 1086, writ refused (strongly relied upon by appellee), both the Hotel Dieu and Williamson cases are favorably considered and distinguished by Chief Justice Conner, viz.: "The distinction made seems to rest upon reasoning to the effect that a patient of a charitable organization is in a sense or degree a party to and beneficiary of the charity of which it is the purpose of the organization to accomplish, while in cases of injury to an employee of the organization the public policy of enforcing the rules relating to master and servant should prevail over the

general rule exempting charitable organizations from the consequences of negligence resulting in injuries to patients."

As already stated, the trial court's ruling in sustaining defendant's motion seems to have followed the theory that defendant was fully exempted by its charter purposes and business from liability for the negligent acts complained of, under the doctrine announced in Vermillion v. Woman's College, 104 S.C. 197, 88 S.E. 649; 14 A.L.R. Annotation, p. 572. However, appellee asserts insufficiency of testimony to support the specific acts of negligence alleged by plaintiff, thus warranting the peremptory instruction; while on the other hand, it is argued that controverted issues of fact were raised for the jury's determination. In considering the latter point (error in directing verdict), all evidence of probative value must be viewed most favorably to plaintiff, the adverse party.

The occasion was the annual game between football teams of the University and Texas A. & M. College. A capacity crowd was in attendance, with a sell out of tickets well in advance. These temporary bleacher stands had been set up on the south side of the playing field, some five days before, having been purchased from the Leavitt Mfg. Company, a nationally known concern, in 1927 or 1928, and were designed to seat some 2,750 persons. They were brought out from storage in early fall by the football boys during practice, hence exposed to weather conditions for a time. Testimony disclosed that all temporary stands available had been made use of and were in place, with supporting jacks and foundation pieces resting on the ground, also uprights which were braced by 2x4 plank, 24 inches long, driven into the ground in front thereof, but no bracing in back. There were no aisles, same not being customary, and no ushers, the ticket holders being allowed to occupy any seat obtainable. Shortly after the game commenced, these bleacher stands collapsed, falling to the west or in the direction of the permanent stands. L. B. Morgan, defendant's employe, testified in detail to the construction of the stands, their placement and complete bracing; the wooden seat and floor boards being secured by iron brackets; that the stands had previously been inspected plank by plank, and were properly erected. There was evidence of a partial collapse of temporary stands in 1938, while sitting on the north side during a game, but it was Mr. Morgan's version that there was only a twisting of some uprights and ground pieces at the earlier date, upon which the stands were cleared and all damaged portions later discarded. He also testified to a heavy rainfall continuing until midday of the afternoon game, and, as a result, the bleacher grounds were unusually wet and sodden. We glean from other testimony that on the day named, defendant University, from current reports, was anticipating one of the greatest crowds of the season; in fact, that facilities for seating the attendants would be severely taxed. Also well within its contemplation was the probability of exciting intervals during the game, when numbers of people would stand and move about, thus subjecting these stands to unusual stress and strain.

We deem it unnecessary to dwell further upon the 357-page narrative of testimony adduced on behalf of plaintiff. It is sufficient to say that fact controversies there appear for decision by the jury, involving the particulars of negligence charged by him. Accordingly, the judgment under review will be reversed and the cause remanded for a new trial.

Reversed and remanded.