**Harvey C. KILLEN, Appellant,**

v.

**BRAZOSPORT MEMORIAL HOSPITAL,
Appellee.**

No. 14054.

Court of Civil Appeals of Texas.

Houston.

Jan. 10, 1963.

Rehearing Denied Feb. 14, 1963.

Sam Houston Clinton, Austin, for appellant.

Finis E. Cowan, Robert J. Malinak, Houston, Baker, Botts, Shepherd & Coates, Houston, of counsel, for appellee.

COLEMAN, Justice.

This is an appeal from a summary judgment granted on motion of the defendant.

Appellant brought suit against the Brazosport Memorial Hospital for damages re-

sulting from personal injuries sustained when appellant's wife fell while walking in the corridor of the hospital. Appellant alleged that the hospital was negligent in certain respects, including:

"In failing to supply its employees who cleaned and mopped said floor covering proper equipment such as signs or other paraphernalia to warn of the hazard then and there existing.

"In permitting an employee to clean and mop said floor covering at a time when proper equipment such as signs was not available to warn of the hazard then and there existing.

"In hiring or retaining the employee who was then and there engaged in cleaning and mopping said floor covering and who was careless and negligent. * * *"

Appellee answered to the merits and pled that the Brazosport Memorial Hospital is a charitable beneficial institution incorporated as such under the laws of the State of Texas.

Appellee filed a motion for summary judgment supported by affidavits. Appellant answered that the affidavit in support of appellee's motion was that of the administrator of the hospital, an interested witness, "whose credibility was for the jury." The answer asserted that depositions on file raised issues of fact (1) as to the status of appellee as a charitable organization; (2) negligence in the employment of servants; and (3) failure to properly establish safety rules. Appellant filed no affidavits in support of his answer.

The facts with reference to the organization and operation of the hospital were carefully developed by deposition and affidavit. Certain citizens of the Brazosport community secured a charter from the State of Texas authorizing them, as trustees, to acquire, erect, maintain and operate "a benevolent, charitable, scientific and edu-

cational Foundation in the City of Freeport, Texas, for the purpose of administering to the sick, to the infirm, to the helpless, to the maimed and to the afflicted of all creeds, colors and nationalities as may be brought to or presented at such Foundation * * * ;" for the purpose of training young women in the nursing profession and for developing and training young physicians and surgeons; for conducting post graduate study and research in medicine and surgery. The foundation is managed through a self-perpetuating board of trustees. None of these trustees are doctors. The charter provided that the corporation should have no capital stock and should not be operated for profit. It also provided that none of the funds which the corporation might acquire by endowment, donation, bequest or fees collected from patrons for services rendered should be applied to any purpose other than the purchase, erection, maintenance, operation, enlargement and improvement of such foundation, its facilities, supplies, equipment and training school. The net value of the assets of the corporation as set out in the charter was $1500.00.

The Corporation on March 1, 1954, leased the premises and facilities of Freeport Hospital. As far as can be determined from the record, the leased premises were first owned and operated by Freeport Hospital Association, an agency of the Freeport Sulphur Company.. On March 1, 1953, the hospital properties were taken over by a partnership of four doctors, who operated a clinic on adjoining premises. The corporation leased the premises from this partnership and on March 1, 1955, purchased the hospital premises and equipment for a consideration of $188,416.00, paid as follows: (1) assumption of notes in the amount of $30,900.00 payable to the Freeport Sulphur Company; (2) payment of a $6,000.00 note to Freeport National Bank; (3) payment of a $10,000.00 note to Velasco State Bank; (4) assumption of loan payable to Freeport Medical and Surgical Clinic in the amount of $16,707.34; (5)

notes payable to partnership in the amount of $124,808.66.

The consideration, as distinguished from the method of payment, was determined by impartial appraisers. No payment has been made on the note payable to the partnership although the balance due has been substantially reduced by donations, in the form of reductions in the balance due, by the individual partners.

The corporation has added a wing to the hospital building at a cost of $102,000.00, part of which was paid by a grant from the Ford Foundation. The payments made on the notes and to meet other expenses incurred by the hospital were made possible by an excess of revenue from paying patients over the operating expenses of the hospital.

The hospital is administered by the trustees through a paid administrator, nurses and other employees. Neither the trustees nor any of the doctors practicing in the hospital receive any salaries from the hospital or the corporation. There is no indication that the compensation of any of the employees is excessive. The corporation has been approved for tax exemption by all taxing authorities.

Appellant has not urged this Court to reject the doctrine of charitable immunity. He relies, first, on the rule that the burden rested on the hospital to prove facts establishing the defense of charitable immunity, as required by Barnes v. Providence Sanitarium, Tex.Civ.App., 229 S.W. 588. He then argues that in view of the numerous factors necessarily considered in determining whether or not a corporation is entitled to the protection of the charitable immunity doctrine, it is obvious that there are many fact issues to be determined.

■ In the determination of the questions raised by this appeal certain rules applicable to summary judgment proceedings must be applied. "The duty of the court hearing the motion for summary judgment is to determine if there are any issues of

fact to be tried, and not to weigh the evidence or determine its credibility, and thus try the case on the affidavits. * * *" Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929.

"It may well be that the ultimate facts in the case will be inferred from uncontroverted facts; and, if so, the inferences themselves are facts, and they are 'controverted' if reasonable minds could draw different inferences. Drawing these inferences is ordinarily the province of the trier of the facts; and summary judgment will not lie in such a situation unless the facts compel, to the exclusion of all others, the inferences which support the summary judgment." Bliss v. City of Ft. Worth, Tex.Civ.App., 288 S.W.2d 558, writ ref., n. r. e.

"Where such an ultimate conclusion would not necessarily be the only conclusion possible to be made from the same evidence by reasonable minds, the conclusion would be a conclusion of fact and not of law. * * * Conclusions of fact, if ultimate and determinative, are to be made by the trier of facts, who does not function in summary judgment proceedings. * * *" Frazier v. Glens Falls Indemnity Company, Tex.Civ.App., 278 S.W.2d 388, writ ref., n. r. e.

However it is well settled that when a motion for summary judgment is supported by affidavits, depositions, stipulations or other extrinsic evidence sufficient on its face to establish facts, which, if proven at trial, would entitle the movant to an instructed verdict, the opponent must show opposing evidentiary data which will raise an issue as to a material fact. Gulf, Colorado & Santa Fe Railway Co. v. McBride, 159 Tex. 442, 322 S.W.2d 492.

■ A careful examination of this record fails to reveal any dispute in the testimony material to the issue of charitable immunity. However, it is necessary to determine from the undisputed facts whether or not the only reasonable conclusion that might be drawn from these facts is the conclusion that the corporation as established and operated is an institution of purely public charity. Barnes v. Providence Sanitarium, Tex.Civ.App., 229 S.W. 588, err. dism. In making this determination the affidavits and other instruments must be construed liberally in favor of the appellant, and if any reasonable doubt arises as to the existence of a genuine issue as to a material fact, it must be resolved against appellee. Gulbenkian v. Penn, supra; Webster v. Webster, Tex.Civ.App., 293 S.W.2d 820, writ ref., n. r. e.

■ The income of the corporation from the operation of the hospital has substantially exceeded the operating expense each year. This fact, however, is not sufficient to raise a fact issue as to the corporation's charitable nature. Scott v. Wm. M. Rice Institute, Tex.Civ.App., 178 S.W.2d 156, err. ref.

■ Appellant asserts, without contradiction, that the evidence shows that for the years 1955–1960 the "charity allowances" have never exceeded 2.15% of the total operating revenue. The hospital investigates all patients to determine their ability to pay the customary charges and requires payment from those having the ability to pay. No patient is turned away from the hospital because he is unable to pay. No continuing program for solicitation of gifts is carried out, nor is the corporation a beneficiary of the United Fund or Community Chest programs of Brazoria County. However, it has received gifts and grants for use in its work. This evidence is not sufficient to raise a question of fact as to the charitable nature of the institution. Steele v. St. Joseph's Hospital, Tex.Civ.App., 60 S.W.2d 1083, err. ref.; Enell v. Baptist Hospital, Tex.Civ.App., 45 S.W.2d 395, err. ref.; Baylor University v. Boyd, Tex.Civ. App., 18 S.W.2d 700.

If from the evidence it can reasonably be inferred that the hospital was conveyed

to the corporation at an excessive consideration so as, in practical effect, to permit the doctors forming the partnership conveying the property to continue its management for their private gain, or if the corporation operated the hospital in such a manner as to permit the inference that it was operated for the private gain of the partnership, or other individuals, a question of fact as to the charitable nature of the corporation is raised and the action of the trial court in granting this summary judgment is error. Malone-Hogan Hospital Clinic Foundation v. City of Big Spring, Tex.Civ.App., 288 S.W.2d 550, err. ref., n. r. e.; Raymondville Memorial Hospital v. State, Tex.Civ.App., 253 S.W.2d 1012, err. ref., n. r. e.

The evidence shows that the consideration for the purchase was determined by appraisal. Appellant offered no testimony that the price so determined was excessive. While the evidence shows that, as part of the purchase price, the corporation agreed to pay certain obligations of the partnership, no inference of private gain to the partnership could arise from this circumstance in the absence of evidence of an excessive purchase price.

The hospital has no laboratory or x-ray facilities and it entered into a contract with the clinic owned by the partnership located adjacent to the hospital building for the use of its facilities and technicians at a negotiated fee. The evidence shows that the charges made for the services do not exceed the usual and customary charges made elsewhere for similar services and that this procedure relieved the hospital of the necessity for making a large capital investment. The balance sheets in evidence indicate that the hospital's receipts for such services substantially exceed the expense involved in rendering them. The evidence further shows that new construction by the hospital and clinic placed the buildings adjacent to each other and that the buildings are connected by a door. The administrator employed by the hospital when it was privately owned was continued in this position by the corporation. He also continued to manage the clinic and to draw salaries from both the hospital and the private clinic. There is nothing in the record to indicate that this arrangement resulted in private profit to the clinic or gave the owners of the clinic any control over the operations of the hospital.

■ According to the by-laws of appellee, the medical staff of the hospital is organized into four sections: the honorary medical staff, the consulting medical staff, the attending medical staff and the visiting medical staff. The honorary medical staff consists of retired practitioners and other members of the medical profession of professional eminence deemed meritorious enough to obtain the honor. The consulting medical staff is elected from among members of the attending medical staff who have relinquished their duties as members of the attending medical staff. The attending medical staff is organized into clinical divisions and each member is given a definite seniority and grade; the attending medical staff is the "sole official representation of the medical staff of the hospital, and as such shall be expected to assist the Board of Trustees in all medical administrative affairs of the hospital," and "all patients entering the hospital without an attending physician shall be referred to members of the attending staff for treatment." The visiting staff consists of members of the medical staff who have been elected as such by the Board of Trustees, but they do not have any vote in the business session of the attending staff. The record does not reveal the identity of members of the "attending staff" during all of the years, but in fiscal 1959–60, of the eight members who did comprise it, the first four were the four partners who owned and operated the clinic and, until its transfer to the appellee, the Freeport Hospital. Patients are admitted to the hospital on a doctor's order. A physician who is not a member of the staff may admit a patient up to three times in emergency situations, otherwise patients must be admitted on order of a member of

the medical staff of the hospital. All appointments to the medical staff are for one year and the staff is subject to the control of rules and regulations adopted by the Board of Trustees. The attending medical staff has the responsibility of providing treatment for charity patients, staffing the Nurses Training School with competent instructors, holding monthly meetings to review the clinical experience for the benefit of all members of the medical staff, and advising the trustees on all matters required of them. They are also required to assign one or more of its members for emergency duty on holidays and other occasions when it might be anticipated that physicians would be difficult to locate. Membership in the attending staff is limited to physicians practicing in the immediate community. The visiting staff consists of the doctors who are privileged to use the hospital facilities, but who prefer courtesy status or who live at such a distance from the hospital as not to be immediately available for call. The evidence shows that every doctor who applied for admission to the staff was admitted and that the doctors composing the partnership in the clinic had no privileges or rights in connection with the hospital not granted to other members of the staff. There is one other hospital in the city and two in other parts of the county. This evidence is not of such nature as to raise a reasonable inference that the hospital is operated for the private benefit of the partnership. No doubt the operation of the hospital benefited all the doctors who practiced in it, as well as the employees who earned wages there, patients who were treated there, and nurses who trained there, but such incidental benefits to individuals will not justify the withdrawal from the corporation of the protection of the doctrine of charitable immunity.

Appellant's contention that the hospital failed to furnish warning signs is not supported by the evidence. The hospital had three such signs, one of which was placed at the bottom of the stairs leading to the corridor where the mopping was done. There is evidence that the other two signs were available for use.

There is no competent evidence in the record to raise a fact issue as to any acts of negligence on the part of the corporation with regard to the employment or retaining of Janie Marquez, the employee charged with negligence causing appellant's injuries. Before she was employed the Director of Nurses and Housekeeping Personnel interviewed her as to her background and previous employment and received good recommendations from previous employers. There had been no previous complaints that she mopped in an unsafe manner or without posting signs. Appellant furnished an affidavit that immediately after the accident Dr. McCary, a member of the attending staff, told Mrs. Marquez, "Honey, I have told you over and over to put up the wet sign in the hall when you mop." Dr. McCary denied making the statement. While there is a fact dispute as to whether the statement was made, it is not material since the statement would not have been admissible in evidence on a trial. Dr. McCary was a member of the attending medical staff and the joint advisory committee, but he had no authority to supervise the activities of Mrs. Marquez, nor to formulate rules and regulations for the hospital's housekeeping personnel. He was neither an employee nor an agent of the hospital. Where an agent or an employee of a corporation makes an admission against the interest of that corporation, such admission is not admissible in evidence in a claim against the corporation unless it was made in the course or scope of the agent's employment. McCormick & Ray, Texas Law of Evidence, 1st Ed., § 508, pp. 658–662; Rogers v. Collier, Tex.Civ.App., 223 S.W.2d 560, err. ref.; Le Sage v. Pryor, 137 Tex. 455, 154 S.W.2d 446; Southern Surety Co. v. Nalle & Co., Tex.Com.App., 242 S.W. 197. The by-laws of the corporation provide that members of the attending staff are expected to assist the Board of Trustees in all *medical* administrative affairs of the hospital. The staff is

concerned only with medical aspects of the hospital and has no authority in any aspect of the control or supervision of the housekeeping. Knowledge possessed by Dr. McCary, therefore, would not be knowledge of, or notice to, the hospital in matters concerning housekeeping. Luling Oil & Mfg. Co. v. Lane & Bodley Co., 49 Tex.Civ.App. 534, 109 S.W. 445; Wellington Oil Co. of Delaware v. Maffi, 136 Tex. 201, 150 S.W.2d 60; Teagarden v. R. B. Godley Lumber Co., 105 Tex. 616, 154 S.W. 973. The statement was not admissible as part of the res gestae because it pertained to things done and knowledge obtained before the accident which the declarant witnessed. Knapik v. Edison Brothers, Inc., Tex.Civ.App., 313 S.W.2d 335, err. ref.

Appellee presented testimony by affidavit that Janie Marquez was instructed by the Director of Nurses and Housekeeping Personnel to use warning signs when mopping floors. Appellant points to the failure to promulgate a written safety rule to that effect by the Board of Trustees or the administrator, as the breach of a nondelegable duty bringing this case within the exception to the rule of charitable immunity recognized in such cases as St. Paul's Sanitarium v. Williamson, Tex.Civ.App., 164 S.W. 36, writ den.; Medical and Surgical Memorial Hospital v. Cauthorn, Tex.Civ.App., 229 S.W.2d 932, err. ref., n. r. e.; Clayton v. Southern Methodist University, Tex.Civ.App., 172 S.W.2d 197, rev. 142 Tex. 179, 176 S.W.2d 749; and Steele v. St. Joseph's Hospital, Tex.Civ.App., 60 S.W.2d 1083, err. ref.

We think that the duty of supervision of cleaning personnel, and establishing procedures for them, might properly be delegated, as it was in the case, to a director of housekeeping personnel. Felan v. Lucey, Tex.Civ.App., 259 S.W.2d 302, err. ref., n. r. e.; Baptist Memorial Hospital v. Marrable, Tex.Civ.App., 244 S.W.2d 567, err. ref., n. r. e.

Here, since signs were available, a cause of action would lie against a negligent employee. Ordinarily where a corporation breaches a non-delegable duty no cause of action could be maintained except as against the corporation. Thus, under the reasoning of Southern Methodist University v. Clayton, 142 Tex. 179, 176 S.W.2d 749, and Medical and Surgical Memorial Hospital v. Cauthorn, supra, the failure to establish a written safety rule would not create a ground of liability against the corporation.

We are indebted to counsel for both appellant and appellee for the excellent briefs filed in this case. They were most helpful in the preparation of this opinion.

It is the opinion of this Court that the only inferences which reasonably may be drawn from the undisputed testimony presented in this case are consistent with and support the ultimate conclusion that appellant's cause of action against appellee is barred by the doctrine of charitable immunity, and that no other reasonable conclusion could have been reached by the Trial Court.

The judgment is affirmed.