**COMBINED AMERICAN INSURANCE COMPANY, Appellant,**

v.

**Sue GILMORE, Guardian of Barnie C. Gilmore, III, et al., and Administratrix of the Estates of Barnie C. Gilmore, Jr., et ux., Appellee.**

**No. 16926.**

Court of Civil Appeals of Texas.

Fort Worth.

May 24, 1968.

---

Brundidge, Fountain, Elliott & Churchill, and Bobby D. Dyess, Dallas, for appellant.

Jennings, Montgomery & Dies, and Elton M. Montgomery, Graham, for appellee.

## OPINION

RENFRO, Justice.

Suit was brought in Jack County by Sue Gilmore as Guardian of the persons and estates of the five minor children of Barnie C. Gilmore, Jr., and wife, Mary Jane Gilmore, both deceased, and as administratrix of the estates of the deceased Gilmores, against Combined American Insurance Company.

It was alleged that prior to the deaths of the Gilmores defendant had issued two policies of insurance on Barnie C. Gilmore, Jr., in the amount of $2,200 each, and two on Mary Jane Gilmore, in the amount of $2,200 each; that they were purchased for the benefit of their children; that the Gilmores died in Jack County as a result of accidental injuries on July 16, 1966; the policies were in full force and effect; that defendant had denied liability.

The defendant filed its plea of privilege to have the case transferred to the county of its domicile, Dallas County, Texas.

Plaintiff sought to maintain venue in Jack County under exception 28 of Article 1995, Vernon's Ann.Tex.Civ.St.

Said exception, applicable here, reads as follows: "28. Insurance. * * * Suits on policies may be brought against any life insurance company, or accident insurance company, or life and accident, or health and accident, or life, health and accident insurance company, in the county where the home office of such company is located, or in the county where loss has occurred or where the policyholder or beneficiary instituting such suit resides."

Defendant's plea of privilege was overruled.

On appeal defendant contends plaintiff failed to prove defendant had issued policies on the lives of the Gilmores; that there was no evidence the minor children were policyholders or beneficiaries; no competent evidence as to place of death of Gilmores; and that the court erred in admitting certain evidence.

The policies plead could not be found by the administratrix, thus plaintiff relied on secondary evidence to establish their existence.

The defendant stipulated that Mrs. Evelyn Walden was a licensed resident agent of the Company at and prior to the time of the death of the Gilmores and that defendant's accident policies are not countersigned in the home office of the Company.

Mrs. Evelyn Walden, by deposition, testified she, as agent for Combined American, sold policies and collected premiums for the Company in small towns and areas assigned to her by the Company's manager in Wichita Falls. Bryson, Jack County, was one of her assignments. She was in Bryson preceding the date of the death of the Gilmores. It was her first assignment to that area. She had in her possession cards with the type of policies and names of the policyholders from whom she was to collect premiums. The Company did not mail premium notices but relied upon its agents to collect personally from the policyholders. She turns her collections over to the manager. She went to the grocery store in Bryson to ask directions to the residences of the policyholders on her list. The list contained several names of policyholders in and near Bryson. She could remember, as of the time of the deposition, only one name. While in the field, she keeps policy forms with her in a loose-leaf notebook.

She was not asked, and did not state, whether she collected premiums from the Gilmores. She was not asked if her records showed the Gilmores as policyholders.

Mrs. Deck, by deposition, testified she worked in a grocery store in Bryson. On July 13, Mrs. Walden came in the store asking directions for finding policyholders from whom she was to collect premiums. Witness saw a card in Mrs. Walden's possession with the Gilmores' name on it. Mrs. Walden asked witness where the Gilmores lived. Mrs. Walden came back to the store on Monday, July 18 (after death of Gilmores) and told witness she had seen Gilmores on preceding Wednesday; that their premiums were paid on the policies and the Gilmores were fully covered. About a week after the death of the Gilmores, witness went with a Company hospitalization man to the Gilmore home where he talked with Barnie Gilmore's mother. He used the Gilmore telephone to call Dallas. After completing the call he told Mrs. Gilmore not to worry—"everything would be taken care of."

The deposition of Mrs. Nora Roberts was introduced by plaintiff. According to the witness Mrs. Walden came to see her on Monday to sell her insurance. Mrs. Walden turned to her book and showed where Gilmores had policies, and showed her two forms of policies which she stated were the type policies owned by Gilmores.

Mr. Roberts, by deposition, testified: on Monday when Mrs. Walden visited him and his wife, Nora, for the purpose of selling insurance policies, he mentioned the death of the Gilmores. Mrs. Walden said, "Oh, we have them covered," then opening her "book" and indicating some form or paper said, "They have this."

The plaintiff testified she lives in Graham. Her wards live in the Gilmore home in Bryson, Jack County, with their paternal grandparents. She is the duly qualified guardian of the persons and estates of the minor Gilmore children.

A few days after the death of the Gilmores she called Mrs. Walden and was told by her that the Gilmores' premiums were paid up to date; that they were in-

sured and the information had been sent to the home office.

Plaintiff testified she had made a diligent search of all of Gilmores' known records and papers. She had been unable to find any policies, premium receipts or other memorandum pertaining to insurance policies with defendant Company. None of the family or relatives knew anything about any records pertaining to insurance with defendant.

Over defendant's objection, plaintiff introduced two sample policies used by defendant. The court ruled, "For the record, I'm going to admit the policies." From the wording of the ruling, and remarks made by the court during argument over admissibility, it is apparent the court did not consider said "form" policies in ruling on the plea of privilege. Neither will we consider them in this appeal.

■ Plaintiff introduced portions of two policies issued to Mr. and Mrs. Roberts for the limited purpose of showing the date thereon. The purpose was to fix with certainty the date Mrs. Walden made the statements to them regarding the Gilmores' insurance. We see no error in their admission for that limited purpose.

The father of Mary Jane Gilmore, Mr. Garner testified: the Gilmores died in Jack County as a result of a car accident. He saw the cars after the accident. The Gilmore car was a total wreck. At the conclusion of Garner's testimony, defendant objected to his testimony, " * * * in total for the reason that it's hearsay and he has no direct evidence of these facts that he stated." The court sustained the objection.

Plaintiff introduced death certificates, prepared by the local registrar of death certificates showing the Gilmores died of broken necks due to a car wreck in Jack County, Texas. The certificates were admissible under Art. 3731a, V.T.C.S.

The defendant offered no evidence.

In National Life Co. v. Rice, 140 Tex. 315, 167 S.W.2d 1021 (1943), the Commission of Appeals, in an opinion adopted by the Supreme Court, held: "By reference to applicable provisions of subdivision 28, * * * it is clear that the venue facts Thomason was bound to establish in the hearing on the plea of privilege are: (1) that he was a policyholder; (2) that he resided in McLennan County; (3) that relator was a life insurance company; and (4) that he was suing on an insurance policy. If they were not proved, the suit must be transferred to the county named in the plea of privilege."

Cases following the decision in the Rice case or recognizing it as the law include Atkins v. American Casualty and Life Insurance Company, 329 S.W.2d 346 (Tex. Civ.App., 1959, no writ hist.); Home Life and Accident Insurance Company v. Phillips-Dupre Hospital, 287 S.W.2d 503 (Tex. Civ.App., 1956, no writ hist.); Casares v. Pioneer Casualty Co., 366 S.W.2d 652 (Tex.Civ.App., 1963, no writ hist.).

Clark, Venue in Civil Actions, p. 167, § 4, states: "In the event that suit is brought in the county where the loss occurred, proof would consist of the following: (a) that the plaintiff was the policyholder (or the beneficiary); (b) that the disability covered by the policy occurred in the county where the suit was instituted, (or that the policyholder died in such county); (c) that the defendant was an insurance company, and (d) that the suit was on an insurance policy."

"Allegations as to the execution of the policy sued upon (unless plaintiff alleges that the policy has been lost or destroyed) are taken as true absent a specific denial under oath, but even in this situation the policy should be put in evidence at the venue hearing. If the policy does not establish plaintiff's status, or if its execution be denied under oath, extrinsic evidence must be produced." McDonald, Texas Civil Practice, Vol. 1, pp. 538–9, § 4.33.

In the instant case plaintiff could not put a policy or policies in evidence because she was unable to find any policies or any evidence there had ever been any policies issued to the Gilmores by defendant. Thus, the burden was cast upon her to prove by extrinsic evidence what a policy, if produced, would have shown.

The extrinsic evidence consisted almost entirely of testimony of witnesses as to what they had been told by Mrs. Walden before and after the death of the Gilmores.

Mrs. Walden was a licensed resident agent of defendant. According to her testimony she had no authority from the Company to do anything except sell insurance policies and collect premiums. Her status, legally, was fixed by Art. 21.-07-1, Sec. 1, sub. (b), V.T.C.S., Insurance Code, wherein it is provided, "(b) The term 'life insurance agent' * * * means any person who is an authorized agent of a legal reserve life insurance company * * * who acts as such in the solicitation of, negotiation for, or procurement of, or collection of premiums on, an insurance or annuity contract with a legal reserve life insurance company; * * *."

Referring to the statements allegedly made by Mrs. Walden as testified to by the witnesses, we call attention to the fact that most of said statements are purely hearsay, or conclusions and opinions of Mrs. Walden or of the witnesses—some, such as they were "fully covered," were to matters entirely without the scope of her authority.

It is a general rule that where an agent or an employee of a corporation makes an admission against interest of that corporation, such admission is not admissible in evidence in a claim against the corporation unless it is made in the course or scope of the agent's authority, Killen v. Brazosport Memorial Hospital, 364 S.W.2d 411 (Tex.Civ.App., 1963, ref., n. r. e.); nor are conclusions and opinions of the agent or employee admissible. Isaacs v. Plains Transport Company, 367 S.W.2d 152 (Tex. Sup., 1963). See also Texas General Indemnity Co. v. Scott, 152 Tex. 1, 253 S.W. 2d 651 (Tex.Sup., 1952); Dallas Railway & Terminal Company v. Gossett, 156 Tex. 252, 294 S.W.2d 377 (1956); Rogers v. Collier, 223 S.W.2d 560 (Tex.Civ.App., 1949, writ ref.); and Romo v. San Antonio Transit Co., 236 S.W.2d 205 (Tex. Civ.App., 1951, ref., n. r. e.).

Plaintiff did not introduce a policy, and in our opinion she failed to prove by extrinsic evidence that a policy or policies had ever been issued to the Gilmores, hence she ʼfailed to prove the Gilmores were ever policyholders in defendant Company. She therefore failed to meet requirement (1) that she was a policyholder (or beneficiary), or that her wards were beneficiaries. There was no evidence, hearsay or otherwise, who the beneficiaries would have been if the existence of a policy had been established.

None of the witnesses testified as to any statement by Mrs. Walden who was to receive the proceeds of any policy. It is well to bear in mind that no one claims Mrs. Walden sold policies to the Gilmores; at the most she was supposed to have collected payment of money for premiums on some kind of policy or policies. Since the defendant sold several different kinds of accident policies, it is impossible, under the record made at the venue hearing, to determine what kind of policies Mrs. Walden referred to, or even to infer who the beneficiary or beneficiaries might have been if there actually were policies issued to the Gilmores.

Being of the opinion the plaintiff failed to meet the proof required of her in order to sustain venue in Jack County under Subdivision 28, we reverse the judgment of the trial court and render judgment ordering the case transferred to a district court in Dallas County, Texas.

Reversed and rendered.