Mary Etta K. WEBSTER, Appellant,

v.

William Kennedy WEBSTER et al., Appellees.

No. 15077.

Court of Civil Appeals of Texas.

Dallas.

June 1, 1956.

Rehearing Denied Oct. 5, 1956.

Ralph W. Currie and Minor L. Morgan, Dallas, for appellant.

Cedric G. Hamlin, Carrington, Gowan, Johnson, Bromberg & Leeds, and Edward B. Winn, Dallas, for appellees.

YOUNG, Justice.

This appeal is from grant of summary judgment, Rule 166–A, Texas Rules of Civil Procedure, upon hearing, to defendants William Kennedy Webster, Lura Webster Black and husband Billy Black, and Mercantile National Bank at Dallas, Independent Executor and Trustee of last will of Adrian K. Webster, deceased. Plaintiff was the surviving widow of testator who died in December 1951, above named individuals being the son and daughter by a former marriage; appellant seeking in first amended original petition the rescission of the written agreement of settlement of the estate dated June 23, 1953, on grounds of false representations inducing its execution, made by defendants (the Bank and said children).

Webster's will of June 1945, on its face dealt with his community interest in lands situated in Kaufman, Carson, Reagan, Deaf Smith and other Texas counties; also in Colorado, among other States; his codicil naming said Bank as Independent Executor, with will probated in Dallas County January 11, 1952, and letters issuing accordingly. Early in the Bank's administration, it was found that some property must be sold to pay debts. Of the estate, 525 acres was in Kaufman County in which plaintiff widow claimed a homestead interest, also an interest in remainder by virtue of an unrecorded deed from Adrian Webster. And in Conejos County, Colorado, was acreage known as Webster Trout Lodge. It was agreed by all parties that the latter property be exchanged for a tract in Lubbock County, Texas, the estate receiving an additional $10,000 in cash; the widow then deeding all interest in the Kaufman County lands for the Lubbock property valued at $15,000 and cancellation of a $5,100 debt owing by her to the estate. This part of the settlement agreement appellant does not seek to rescind, the properties having passed to third parties.

The 1945 will set up a residuary estate which the widow and defendant children were to take "share and share alike"; and material here, gave one-half of the minerals for life, under sec. 21, Block E, Georgetown Railway Survey, Reagan County, to his sister, Helen R. Webster, the other one-half to surviving wife (appellant here and sometimes referred to as widow). Testator also devised to the latter for her lifetime all his right, title and interest in and to sec. 31, Block T, Carson County, with further power, if necessary for her support and maintenance, to sell or mortgage same or the minerals, any interest remaining at her death to become part of the residuary estate.

The 1953 agreement of settlement (here sought to be rescinded) is too lengthy for repetition. It was signed by decedent's sister Helen R. Webster, the widow (designated as wife), the son and daughter heretofore named, and Executor Bank; first, reciting the desire of all signatories to thereby "settle and compromise all differences which may be existing between them so that litigation in this Estate may be avoided and the Estate may be promptly and harmoniously administered." It then referred to the Webster Trout Lodge (Colorado) and Lubbock County exchange of land; the Kaufman County conveyance by widow to children, receiving the Lubbock property in return; then setting forth various properties which the widow quitclaimed to the children, inclusive of her separate and community interests; in particular, 2(a): "Son and Daughter hereby agree that Wife shall have a life estate (without the power to consume) on the following land in Carson County, Texas: 640 acres, unimproved, Sec. 31, Block 'T', A.B. & N. Survey, Abstract No. 26. Subj: to lien to National Farm Loan Association; present balance $8,113.79 * * *"; that (8) "Son and daughter hereby jointly and severally agree that if the assets of the estate which are left to said Son and Daughter shall be in-

sufficient upon the application of the rules of law, applicable to said Last Will, to pay in full the debts, costs, expenses, and taxes of the Estate of Decedent, said Son and Daughter will indemnify and hold Wife harmless against all losses, damages, payments, liabilities, expenses or costs incurred or made by her as the necessary result of such payment or any actions, suits, or proceedings resulting from the transfers, partitions and divisions provided for in this Settlement Agreement"; and that (11) "It is hereby asserted and declared by all the parties hereto that any and all rights, title or interest recognized, transferred, or conveyed to Wife under this Agreement is roughly the equivalent of all right, title, or interest in Decedent's Estate given to said Wife by Decedent's Last Will."

Appellant's original petition filed July 16, 1954 prayed in the alternative for Declaratory Judgment construing this settlement agreement; in amended petition, for rescission only. Mrs. Webster alleged that by false representations (see Footnote 1) she was induced to surrender without consideration property (listing it) in excess of $23,-000. The amended petition was duly verified as setting forth matters within affiant's personal knowledge, save as to paragraph

1. Such allegations of fraud are lengthy, and for purpose of this opinion are sufficiently summarized in brief of counsel, viz.:

"The following false representations were made to appellant, without which she would not have executed the agreement or the deeds pursuant thereto: (1) That the written instrument, prepared by the Bank, merely stated in legal form, the things to which she had consented. (2) The words 'without power to consume', used by the Bank in limiting her estate in Carson County land, meant that she was prohibited only from disposing of the surface as distinguished from the minerals. (3) That under the terms of the Will (which was in possession of the Appellee Bank and not exhibited to her) she received only certain life estates. (4) That life estates were of such problematical value as to amount to no value. In this connection, she relied on the representations of the Bank who was

then acting towards her in a fiduciary capacity. (5) That the things which she was receiving under the settlement agreement was roughly the equivalent of that which was devised to her by her husband under his will."

The Bank's conduct in probating the will of Webster in Dallas County was further attacked as void and constituting a false representation, deceased residing at time of death in Kaufman County; that petitioner would never have entered into the settlement agreement had she not believed the Will was probated in the proper county, with the Bank a legally qualified Executor for her protection against creditors, and assurance that any settlement agreement would be carried out. She charged the existence of a fiduciary relationship of the Bank toward her; and reliance upon such Executor's superior knowledge in performance of duty under said Will and its proper probate.

3 (the Bank's probate of will and appointment as Independent Executor). And attached thereto were Exhibits A–1 (1945 Will), A–2 (codicil), and B, the Settlement Agreement.

Answers to above petition by the Bank and other defendants consisted of exceptions, general denials, defenses, and Exhibits not necessary to mention. Their motion for summary judgment likewise included the Webster Will, codicil, and settlement agreement; also photostats of various Quit Claim Deeds executed by Mary Etta Webster at Lubbock on June 30, 1953 to land in various counties and States pursuant to the questioned agreement of settlement; judgment of probate of will in Dallas County and appointment of Bank as Independent Executor; incorporating by reference a supplemental abstract to the Carson County land dated May 20, 1954; and oral deposition of Mary Etta Webster taken March 12, 1955 before Richard A. Ward, a Notary Public in and for Dallas County, Texas. Movants say that on basis of said exhibits, pleading, and deposition, plaintiff presents no genuine issue as to any material fact; praying for judgment as a matter of law, which the court accordingly rendered upon hearing, by order of June 29, 1955 that plaintiff take nothing by her suit. Appellant duly excepted, claiming that the summary dismissal of her suit was unwarranted in face of a verified petition containing detailed misrepresentations of defendants upon which she relied to her injury and constituting actionable fraud.

Our discussion of points and counterpoints may be limited to appellant's claim of fraud involved in settlement of her rights in Section 31, Block T, Carson County.

Webster's will included as part of the wife's life estate a power to sell or mortgage this land and underlying minerals, the residuary estate succeeding only to any part not consumed at her death. In the settlement agreement her rights in the Carson County land (surface and minerals) were restricted to a life estate *without* the power to consume; and this limited interest was made subject to a substantial balance of lien indebtedness.

In March, preceding summary trial, defendants had taken the oral deposition of the widow, Mary Etta Webster, wherein she was repeatedly asked to state what misrepresentations were in fact made by any of them and relied upon, inducing her to sign the settlement agreement; appellant *making no answers in consonance with her sworn allegations of fraud;* (see Footnote 2); and at the trial obviously relied on the statements contained in her verified petition as establishing a prima facie case.

Appellees, in the situation thus presented, argue correctness of the judgment rendered in the summary proceedings. They say that plaintiff's own testimony "refutes" the allegations contained in her pleading; that she has thereby failed at the hearing to establish the presence of a genuine issue as to any material fact. Fowler v. Texas Emp. Ins. Ass'n, Tex.Civ.App., 237 S.W.2d 373 (writ ref.); Zamora v. Thompson, Tex. Civ.App., 250 S.W.2d 626 (writ ref.), and Gwinn v. Associated Employers Lloyds, Tex.Civ.App., 280 S.W.2d 624, are cited in support of the court's ruling; also Statham v. City of Tyler, Tex.Civ.App., 257 S.W.2d 742, 745, the latter case holding in part: "Appellee was required to present admissible evidence having probative force, showing the absence of any material issue of fact going to the foundation of appellant's cause of action as she had alleged it in her petition. When the appellee had done this, as

2. These questions were: "Q All right. Now, Mrs. Webster, in connection with the execution of that agreement, what representations were made to you, if any?" "Q You state in your petition that certain representations were made to you. Now, we are just trying to find out what representations were made to you, and by whom those representations were made." "Q Did anybody make any representations to you to induce you to sign that agreement?" "Q All right, now have you stated all of the representations that were made to you in connection with that agreement?"

unquestionably it did, the burden of going forward with evidence of like quality did shift to appellant to show that an issue of fact exists, or evidence that creates a doubt about it in the mind of the court."

■ At the deposition hearing, plaintiff was not questioned by her own counsel; and undoubtedly, in view of her deposition testimony, as elicited by the defense, the burden was upon Mrs. Webster of going forward with further evidence of a prima facie case; or "evidence that creates a doubt about it in the mind of the court"; Statham's appeal, supra. A careful appraisal of the deposition in question convinces us that such burden of the resisting party in the summary proceedings has been met. Her allegations of misrepresentations were, in part, that: "eventually in order to effect some kind of a settlement and relying upon the representations made to her as hereinabove stated, did finally agree that she would surrender her life estates (that being what she supposed she had in the estate of her deceased husband) save and except that she desired to retain, just as the will gave it to her, her interest in the Carson County land. Except for her reliance on such representations she would not have assented." The oral questioning of plaintiff by movant Counsel took a wide range (inclusive of a 1954 business trip to Amarillo and the Carson County Abstract of Title); and admittedly a part of the deposition was the following affidavit executed by her: "The State of Texas County of Potter Before Me, Alice Whitefield, a Notary Public, in and for said County, State of Texas, on this day personally appeared Mary Etta Webster, a feme sole, to me well known, and who after being by me duly sworn, deposes and says that she executed a 'Quit Claim Deed' to Section 31 Block T AB&M of Carson County, Texas, June, 1953, by error and not of intention, at the time and when many other papers were executed. Administrators of the estate of Adrian K. Webster state to her that said Quit Claim Deed retained for her all the rights and privileges the said Will of Adrian

Webster bequeathed to her. It is the specific purpose of this affidavit that she herewith retains and claims all rights as per the said will. Mary Etta Webster. Subscribed and sworn to before me this 27 day of May, A.D. 1954. Alice Whitefield, Dallas County, Texas." Further extracts from her deposition testimony were: "* * * Mr. Drebing (Trust Officer) told me that we had everything in our settlement that the will called for except I couldn't sell the land—

"Q. You knew there was some change— A. He told me that.

"Q. You knew there was some change from what the will provided? A. Yes.

"Q. * * * Now, Mrs. Webster, tell us what interest you are claiming in the Carson land. A. What the will set up for me to claim, to have, to use, to do, and Mr. Drebing told me I had, except I couldn't sell it, but I had no desire to sell it anyway."

■ "Customarily the movant is held strictly to a conclusive showing that no fact issue exists and that he is entitled to judgment without further delay, and conversely the resisting party is accorded greater indulgence and the motion for summary judgment will be denied, regardless of informalities or defects in his papers, if it appears that a substantial fact issue may exist. Whelan v. State [Tex.] Civ.App.1952, 252 S.W.2d 271, reh[earing] den[ied]. Pleadings, affidavits and other instruments will be construed liberally in favor of the party against whom summary judgment is sought. Ross v. Burleson [Tex.] Civ.App.1954, 274 S.W.2d 105, reh[earing] den[ied]." Note, Pocket Part, Vol. 41-B Tex.Jur.Supp., p. 6. "In a summary judgment proceeding, credence will be given to testimony most favorable to the party against whom the judgment is sought and evidence to the contrary will be disregarded. Frazier v. Glens Falls Indem. Co. [Tex.] Civ.App.1955, 278 S.W.2d 388, ref. n. r. e." Note, Rule 166-A, p. 24, 1956 Pamphlet Supplement, Texas Rules of Civil Procedure.

Appellees further argue that in the light most favorable to appellant, the representations of value allegedly made by trustee Bank officer were no more than expressions of honest opinions and belief, not amounting to false representations, in absence of allegations of bad faith; or allegations presenting any exception to the general rule that fraud may not be predicated upon a misrepresentation of law. But plaintiff alleges a fiduciary relationship, i. e., one of confidence and trust, and pleadings may be amended.

Judgment herein is reversed and the cause remanded for further proceedings.